UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**NICOLE E. CRONIN,**

        **Plaintiff,**

v.                                                                          Case No: 6:11-cv-1852-Orl-GJK

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OF DECISION

Nicole E. Cronin (hereafter "Cronin"), on behalf of the minor, J.C. (hereafter "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") finding that Claimant's disability ended as of June 1, 2009, and Claimant has not become disabled since that date. Doc. No. 1. For the reasons set forth below, the final decision of the Commissioner is **REVERSED AND REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g).

### I. MEDICAL AND OPINION EVIDENCE

    **A. Hendrik Dinkla, M.D.**

On January 2, 2008, Hendrik Dinkla, M.D., conducted his initial consultation with Claimant. R. 305-07. Dr. Dinkla noted that Claimant was born premature by nine weeks with intraventricular bleeding, but her subsequent cognitive development has been normal. R. 305. Dr. Dinkla indicated that Claimant has a history of seizures and the events which precipitated his involvement were instances of falling down, going limp and turning blue. R. 305. Claimant also reported instances of confusion that lasted up to thirty minutes. R. 305. Dr. Dinkla's

examination of Claimant was essentially normal and Dr. Dinkla noted that Claimant did not have any motor deficits. R. 306. Dr. Dinkla's medical impression was that Claimant has risk factors for seizures and noted that an EEG showed "atypically sharp vertex activity which may indicate a convulsive tendency but no frank focality was seen otherwise." R. 306-07.[1] Dr. Dinkla noted that Claimant's MRI scans showed no focal features. R. 307.[2] Dr. Dinkla indicated that Claimant may have a "focal onset seizure disorder" and prescribed Trileptal. R. 307.

On March 27, 2008, Dr. Dinkla indicated that an EEG "showed atypically large, sharp vertex activity which might indicate an increase of irritable tendency. There was nothing significantly focal." R. 304. Dr. Dinkla's physical examination revealed no focality at all and Dr. Dinkla indicated that Claimant was "taking Trileptal without difficulty." R. 304. On June 3, 2008, Dr. Dinkla noted that Claimant reported one major seizure when she had bronchitis that caused choking and convulsions. R. 303. After reviewing Claimant's chest x-ray, Dr. Dinkla indicated that Claimant may have a low seizure threshold, requiring only minimal provocation. R. 303. Dr. Dinkla noted that Claimant's past seizures were "complex partial" and Claimant was told she had petit mal seizures. R. 303. Dr. Dinkla disagreed that Claimant had experienced any petit mal seizures and opined that Claimant has "focal onset seizure, possibly a complex partial seizure." R. 303. Dr. Dinkla indicated that Claimant had a "very nonfocal examination. She seems to be developing normally for age. I think that she is doing quite well." R. 303.

On December 9, 2008, Claimant saw Dr. Dinkla after having a reported seizure in her sleep. R. 302. Dr. Dinkla noted that Claimant went to the emergency room for the seizure and

---

[1] EEG stands for electroencephalogram.

[2] MRI stands for magnetic resonance imaging.

the blood work and CBC were fine.[3] R. 302. Dr. Dinkla indicated that Claimant's alkaline phosphatase was mildly elevated, her magnesium was normal and liver functions were normal. R. 302. Dr. Dinkla opined that Claimant was "basically doing quite well." R. 302.

In March 2009, Dr. Dinkla completed a treating source seizure questionnaire. R. 218. Dr. Dinkla indicated that Claimant has a seizure disorder and her seizures were controlled for seven months with Trileptal until she had a breakthrough seizure while sick with a cold. R. 218. Dr. Dinkla diagnosed Claimant with focal onset seizure disorder. R. 218. Dr. Dinkla noted that Claimant is taking Trileptal twice a day and is "not experiencing side-effects at this time." R. 218. Dr. Dinkla indicated that Claimant was medication compliant and he was not aware of Claimant having any seizures in the past three months. R. 218.

On September 30, 2009, Dr. Dinkla performed an EEG on Claimant. R. 308. Dr. Dinkla reviewed the results and stated that his impression was an "[u]nremarkable drowsy and lightly sleeping sleep deprived electroencephalogram without focal features or epileptiform features." R. 308. On November 12, 2009, Dr. Dinkla reported that Claimant may have had three seizures since her last visit. R. 301. Dr. Dinkla indicated that he had increased Claimant's dosage of Trileptal and she had not had any seizures since. R. 301. Dr. Dinkla indicated that Claimant had an EEG which was unremarkable. R. 301. Dr. Dinkla stated that Claimant "clearly has epilepsy and a negative EEG doesn't influence my recommendations." R. 301.

On May 20, 2010, Dr. Dinkla reported that Claimant had seizures in her sleep since her last visit. R. 300. Dr. Dinkla indicated the seizures were characterized by coughing and apparent choking, but Claimant did not truly convulse. R. 300. Dr. Dinkla indicated that Claimant's last EEG was negative and it is "very unlikely that she has petit mal seizures" because Claimant has never had the associated "typical three-cycle per second spike and wave

---

[3] CBC stands for complete blood count.

activity associated with petit mal seizures." R. 300. Dr. Dinkla reported that Claimant "has had some episodes in which she was stated to be staring off, and apparently she got written up in her classes for not paying attention. Whether or not this was a seizure or not I do not know." R. 300. Dr. Dinkla noted that Claimant is at an age where she could develop petit mal epilepsy. R. 300. Dr. Dinkla also noted that one of Claimant's EEGs "showed a typically sharp vertex activity which may represent a underlying irritable tendency. No frank focality was noted." R. 300. Dr. Dinkla stated that Claimant is "developing well" and he would review the recommendations from Nemours when available. R. 300.

### B. Harry S. Abram, Jr., M.D.

On May 21, 2010, Harry S. Abram, Jr., M.D., a doctor at Nemours Children's Clinic, saw Claimant for her complaints of seizures. R. 333-35. Dr. Abram reported that Claimant started having concerns about seizures in the summer of 2007, and since then has had approximately ten events that were felt to be seizures. R. 334. Dr. Abram conducted and reviewed Claimant's EEG, finding it was "equivocally abnormal" due to three "isolated paroxysmal discharges" that were of a generalized nature as Claimant entered sleep. R. 334, 354. Dr. Abram indicated the paroxysmal discharges could be a "variation of normal such as hypnagogic hypersynchrony." R. 354. Dr. Abram concluded that Claimant's EEG was "essentially normal – equivocally abnormal." R. 334. Dr. Abram indicated that Claimant has reached all of her development milestones in an age appropriate manner and has no "developmental concerns." R. 334. Dr. Abram's examination of Claimant was "entirely benign." R. 334. After reviewing Dr. Dinkla's records, Dr. Abram indicated that he agreed that Claimant may have complex partial epilepsy and Trileptal was an appropriate treatment. R. 334. Dr. Abram recommended Claimant obtain an MRI of her brain and follow-up with the nurse practitioner. R. 335.

On September 21, 2010, Dr. Abram saw Claimant for a neurological follow-up. R. 357. Dr. Abram indicated that Claimant has not had any "clearcut seizures" since May 2010, and her "most recent clearcut seizure occurred in January, 2010." R. 357. Dr. Abram noted that previous reports of Claimant engaging in an occasional blank stare had not occurred recently and when Cronin sees this happening she "immediately tries to get attention and [Claimant] has been responsive." R. 357. Dr. Abram indicated that, since starting school, Claimant was having some occasional daytime incontinence and was wetting her bed several times a week. R. 357. Dr. Abram further indicated that there were no academic concerns reported, although Claimant occasionally gets in trouble at school for behavioral concerns. R. 357.

After indicating his examination of Claimant was essentially normal, reiterating that the May 21, 2010, EEG was equivocally abnormal and noting that a July 1, 2010, MRI was abnormal due to some atrophy and white matter loss, Dr. Abram's medical impression was that Claimant suffers from complex partial seizures. R. 357. Dr. Abram stated that Claimant's seizures "are well controlled" with Trileptal. R. 357. Dr. Abram stated that "concerns of occasional staring and some urinary incontinence are of unclear etiology and need to be monitored." R. 357.

Dr. Abram recommended that Claimant continue taking Trileptal, and continue monitoring her seizures and "staring spells." R. 357. Dr. Abram further recommended that if Claimant continued to have urinary incontinence that she see her primary care physician to rule out a urinary tract infection. R. 357-58. Dr. Abram opined that Claimant's bed wetting may be "due to being so exhausted from her long days without a nap." R. 358. Dr. Abram indicated that if Claimant continues to have bouts of staring and urinary incontinence that he may consider having an overnight video EEG to ensure she is not having subtle seizures. R. 358.

### C. Scott Fauth, M.D.

On December 1, 2009, Scott Fauth, M.D., a non-examining doctor, completed a childhood disability evaluation form. R. 293. Dr. Fauth indicated that Claimant's impairments are being born premature with a birth weight of 1156 grams and seizure disorder. R. 293. Dr. Fauth opined that medical improvement has been established. R. 293. Dr. Fauth opined that Claimant has no limitation in the areas of acquiring and using information, attending and completing tasks, and interacting and relating with others. R. 295. Dr. Fauth also opined that Claimant has less than marked limitations in the areas of moving about and manipulating objects, and caring for herself. R. 296.

## II.     ADMINISTRATIVE PROCEEDINGS

On April 21, 2005, Claimant filed her application for supplemental security income (hereafter "Application"), alleging a disability onset date of March 21, 2005, the date she was born. R. 89. On April 26 2005, it was determined that Claimant's impairments of premature birth and low birth weight functionally equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereafter "Listings") and, therefore, Claimant's Application was approved. R. 25, 181-82. On June 29, 2009, the Commissioner determined that Claimant is no longer disabled as of June 1, 2009. R. 26-27. On October 27, 2010, a hearing before an administrative law judge (hereafter "ALJ) was held and Cronin testified. R. 65, 360-75.

At the hearing, Cronin, on behalf of Claimant, executed a waiver of her right to legal representation. R. 28, 364. The ALJ explained the medical evidence he had and asked whether Claimant received any medical treatment in 2010. R. 364-65. Cronin stated that Claimant had treated with Dr. Dinkla, Nemours Clinic and Wolfson's Children Hospital. R. 365-66. The ALJ stated that he would obtain the records from these sources and would review them prior to

making his decision. R. 366. Cronin testified that Claimant is five-years old and attends kindergarten. R. 367. Cronin testified that Claimant is seeking benefits due to her seizures and Claimant's doctors have concluded that Claimant is having complex partial seizures during the day which cause Claimant to stare, envision things, and not hear the teacher's instruction. R. 368-69. Cronin stated that Claimant gets behind in school as a result. R. 369.

Cronin testified that Claimant's seizure medication was recently increased but it has not helped control her seizures. R. 370. Cronin indicated that the side effects of Claimant's medication are teeth grinding, tiredness and trouble controlling her bladder. R. 371. Cronin testified that Claimant has been diagnosed with epilepsy, has a grand mal seizure every six months and has had seizures since she was two and a half years old. R. 370-71. Cronin stated that she brought Claimant's daily school planner to the hearing and that, in the planner, Claimant's teacher wrote that Claimant was defiant, talked out of turn and refused to do her work. R. 372. Cronin indicated that she recently spoke to the teacher and the teacher indicated that Claimant sometimes stares off and does not pay attention. R. 373. Cronin testified that she subsequently contacted the doctor and was told that Claimant's most recent sleep study indicated that Claimant has a tendency for complex partial seizures. R. 373.

On January 4, 2011, the ALJ issued his decision. R. 12- 23. The ALJ noted that April 26, 2005, was the date of the most recent decision finding Claimant disabled due to premature birth and a birth weight under 1200 grams. R. 15-16. The ALJ indicated that on the date Claimant was found disabled, her impairments resulted in marked limitations in the domains of caring for herself, and health and physical well-being. R. 16. However, Claimant's impairments imposed no limitation on her ability to acquire and use information, attend to and complete tasks, interact and relate with others, or move and manipulate objects. R. 16. The ALJ found that

medical improvement was established, as of June 1, 2009, because Claimant's "height and weight does not result in the functional equivalence of any listing in the Listing of Impairments." R. 16. Consequently, the ALJ found that the impairments Claimant had on April 26, 2005, are non-severe. R. 16.

In addition to finding medical improvement of her initial impairments, the ALJ found that Claimant has developed a subsequent severe impairment of seizure disorder. R. 16. The ALJ found that Cronin was not fully credible to the extent she claims disability on Claimant's behalf, Claimant's allegation of disability was not supported by the findings during clinical examinations and her seizure impairment did not meet, equal or functionally equal a Listing because she had only experienced three seizures between December 2008 and November 2009. R. 18. The ALJ gave "significant weight" to Dr. Dinkla's treating records and Dr. Fauth's opinion. R. 18. In evaluating the severity of Claimant's seizure impairment on the six domains of functioning, the ALJ found that Claimant has no limitation in the domains of acquiring and using information, attending and completing tasks, or interacting and relating with others. R. 18-20. The ALJ found that Claimant has less than marked limitations in moving about and manipulating objects, caring for herself and in health and physical well-being. R. 21-22. Based on these findings, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets, medically equals or functionally equals the Listings since June 1, 2009. R. 22-23. Accordingly, the ALJ found that Claimant's disability ended on June 1, 2009, and Claimant has not become disabled since that date. R. 23.

### III.   LEGAL STANDARDS

#### A. THE ALJ'S DISABILITY ANALYSIS

A child under the age of 18 is considered disabled if he or she has a "medically

determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step-two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c).

At steps three and four, the ALJ must determine whether the claimant's impairment or combination of impairments meets or functionally equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration

requirement (20 C.F.R. §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

In determining whether an impairment or combination of impairments functionally equals the Listings, the ALJ must assess the claimant's functioning in terms of six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for oneself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A child's impairments functionally equal a listed impairment, and thus constitute a disability, if the child's limitations are "marked" in two of the six domains, or if the child's limitations are "extreme" in one of the six domains. 20 C.F.R. § 416.926a(d).

In assessing whether the claimant has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from medically determinable impairments, including any impairments that are not severe. 20 C.F.R. § 416.926a(a). The ALJ must consider the interactive and cumulative effects of the claimant's impairment or multiple impairments in any affected domain. 20 C.F.R. § 416.926a(c).

20 C.F.R. § 416.926a(2) explains that a child has "marked limitation" in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain or complete activities. A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. The regulations also explain that a "marked" limitation also means: a limitation that is "more than moderate" but "less than extreme"; or the equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. 20 C.F.R. § 416.926a(e)(2).

20 C.F.R. § 416.926a(e)(3) explains that a child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be very seriously limited when his impairment(s) limits only one activity or when the interactive and cumulative effects of his impairment(s) limit several activities. The regulations also explain that an "extreme" limitation also means:

1. A limitation that is "more than marked."

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean.

3. A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to ensure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

4. For the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation.

20 C.F.R. § 416.926a(e)(3). Thus, for a disability finding, a child's impairments functionally equal a Listing if the child's limitations are "marked" in two of the six domains, or if the child's limitations are "extreme" in one of the six domains. *Id*.

After finding a child disabled, the Commissioner periodically reviews the child's eligibility for disability benefits using a three step review process. *See* 20 C.F.R. § 416.994a. At step one, the Commissioner determines whether there has been medical improvement in the child's condition. 20 C.F.R. § 416.994a(b)(1). Medical improvement is defined as "any

decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994a(c). If there has not been medical improvement, the Commissioner will find that the child is still disabled. 20 C.F.R. § 416.994a(b)(1). If there has been medical improvement, the Commissioner moves to step two and determines whether the child's impairment(s) still meets or equals the severity of the listed impairment that it met at the time of the most recent determination. 20 C.F.R. § 416.994a(b)(2). If not, then the Commissioner determines at step three whether the "child's current impairments, including any the child did not have at the time of the earlier most recent favorable decision, are disabling under the same rules used to make the initial determination of disability." *Edmundson ex rel. J.D. v. Astrue*, No. 8:10-cv-675-T-26TBM, 2011 WL 3875416 at *2 (M.D. Fla. Aug. 10, 2011); *see also* 20 C.F.R. § 416.994a(b)(3).

### B. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

### C. REMEDIES

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice. *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829-30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[4]

## IV.  ANALYSIS

Claimant raises three issues on appeal. Claimant argues that the ALJ ignored Dr. Dinkla's May 20, 2010, treatment record and failed to consider Dr. Abram's treatment records, which resulted in the ALJ erroneously concluding that she does not meet listing 111.02B. Doc. No. 23 at 3-4. Claimant also argues that the ALJ did not fairly and fully develop the record by failing to obtain the sleep study that Cronin testified was completed two months prior to the hearing, failing to consider the child's daily planner, and failing to send a questionnaire to Claimant's kindergarten teacher. Doc. No. 23 at 2. Finally, Claimant argues that the ALJ erred

---

[4] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

in determining she has no limitation in the ability to attend to and complete tasks. Doc. No. 23 at 4-5. Claimant requests the Court remand the case to the Commissioner for further consideration; direct the Commissioner to obtain updated medical records; and direct the Commissioner to "obtain information from Claimant's teachers concerning her behavior in class, her ability to focus and complete activities, and whether she requires special help." Doc. No. 23 at 6.

Listing 111.02 is entitled "Major motor seizure disorder" and is composed of two medical conditions: convulsive epilepsy and convulsive epilepsy syndrome. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 111.02A, B. The listing for convulsive epilepsy is met when a child claimant has 1) an established diagnosis of epilepsy; 2) more than one major motor seizure per month despite at least three months of treatment; and 3) either daytime episodes characterized by loss of consciousness and convulsive seizures, or nighttime episodes whose residual effects interfere with daytime activity. *Id*.[5]

The listing for convulsive epilepsy syndrome is met when a child claimant has 1) an established diagnosis of epilepsy; 2) at least one major motor seizure in the year prior to application despite at least three months of treatment; and 3) an IQ of 70 or less; significant interference with communication due to a speech, hearing, or visual defect; a significant mental

---

[5] Listing 111.02A states:

> A. Convulsive epilepsy. In a child with an established diagnosis of epilepsy, the occurrence of more than one major motor seizure per month despite at least three months of prescribed treatment. With:
>
> 1. Daytime episodes (loss of consciousness and convulsive seizures); or
>
> 2. Nocturnal episodes manifesting residuals which interfere with activity during the day.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 111.02A.

disorder; or significant adverse medication side effects that interfere with major daily activities. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 111.02B.[6]

Claimant argues that she meets listing 111.02B because Dr. Dinkla, on November 12, 2009, stated that Claimant "clearly has epilepsy" (R. 301) and indicated, on May 20, 2010, that Claimant had seizures in her sleep (R. 300). Doc. No. 23 at 3. Claimant points out that Dr. Abram indicated that Claimant suffers from urinary incontinence and episodes of staring which need to be monitored because their etiology is unclear (R. 357). Doc. No. 23 at 4.[7] Claimant posits that "it is likely that Claimant's incidents of staring and urinary incontinence are caused by the adverse effects of her medication. Therefore, her disability meets or exceeds this specific listing." Doc. No. 23 at 4. In short, Claimant argues that she meets listing 111.02B because she has a diagnosis of epilepsy, had at least one major motor seizure despite at least three months of treatment and has significant adverse side effects from her medication that interfere with major daily activities.

---

[6] Listing 111.02B states:

> B. Convulsive epilepsy syndrome. In a child with an established diagnosis of epilepsy, the occurrence of at least one major motor seizure in the year prior to application despite at least three months of prescribed treatment. And one of the following:
>
> 1. IQ of 70 or less; or
>
> 2. Significant interference with communication due to speech, hearing, or visual defect; or
>
> 3. Significant mental disorder; or
>
> 4. Where significant adverse effects of medication interfere with major daily activities.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 111.02B.

[7] Claimant asserts that the ALJ ignored Dr. Dinkla's May 20, 2010, treatment note and failed to consider Dr. Abram's treatment records because "[n]o mention of the evaluations was made in the determination." Doc. No. 23 at 3.

The Commissioner argues that Claimant does not meet listing 111.02B because Claimant has never "demonstrated any convulsing during a seizure, has never had a grand mal seizure and does not have a clear diagnosis of epilepsy."  Doc. No. 24 at 11.  The Commissioner also argues that Claimant cannot establish that the side effects of her medication are severe and interfere with major daily activities because Cronin reported that Claimant's episodes of staring are a symptom of her seizures and Cronin never reported Claimant's urinary incontinence as a side effect to her doctors.  Doc. No. 24 at 13.

In addressing whether Claimant's severe impairment of seizure disorder met one of the Listings, the ALJ stated that Claimant "is basically being seen once a year by her treating physician and has experienced only three seizures between December 2008 and November 2009, which is inconsistent with meeting, equaling, or functionally equaling the listing level severity of her impairment."  R. 18.  The parties in this case argue and assume that this statement indicates that the ALJ found Claimant did not meet listing 111.02B.  *See* Doc. Nos. 23 at 3-4; 24 at 11, 13.  The Court is unwilling to indulge in this assumption because, other than the ALJ's quoted statement, the ALJ did not provide any analysis of whether Claimant met any of the other criteria to meet listings 111.02A or B.  Given the parties' dispute about whether Claimant has an established diagnosis of epilepsy or significant adverse medication side effects that interfere with her major daily activities, the Court cannot determine whether the ALJ properly evaluated the medical evidence of record or considered the criteria in listings 111.02A and B in finding that Claimant does not meet a listing.  The ALJ's decision simply does not provide the Court with enough information to determine whether the ALJ properly considered the criteria in listings 111.02A and B.  A "[f]ailure to apply the correct legal standards or to provide the reviewing

court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

The Court's inability to determine whether the ALJ properly analyzed the criteria in listings 111.02A and B is compounded by the ALJ's failure to acknowledge or mention Dr. Dinkla's June 3, 2008, treatment record which states that Claimant had one major seizure that was associated with choking and convulsions. R. 303.[8] Dr. Dinkla's June 3, 2008, treatment record could lend support for finding that Claimant has suffered at least one major motor seizure despite at least three months of treatment.[9] The ALJ also failed to address Cronin's testimony that Claimant suffers from fatigue as a side effect of her medication. R. 371. Instead, the ALJ indicated that Cronin only testified that teeth grinding and incontinence were the side effects Claimant experienced. R. 17. When these errors are considered together with the ALJ's failure to expressly evaluate whether Claimant meets listing 111.02A or B, the Court is unable to determine whether the ALJ applied the correct legal standards in determining that Claimant did not meet the Listings and whether the ALJ's finding that Claimant does not meet the Listings is supported by substantial evidence.[10] *See id.*

---

[8] The Commissioner asserts that Dr. Dinkla's June 3, 2008, treatment note is not relevant because the ALJ found medical improvement as of June 1, 2009. Doc. No. 24 at 11 n.5. This statement is unpersuasive for two reasons. First, the ALJ gave great weight to all of Dr. Dinkla's treatment records (*see* R. 18) and they, therefore, were integral to the ALJ determining that Claimant suffers from the severe impairment of seizure disorder and are likewise relevant to determining whether Claimant meets listings 111.02A or B. Second, the ALJ cites no legal authority to support the statement that Dr. Dinkla's June 3, 2008, treatment note is not relevant.

[9] The Court expresses no opinion as to whether Dr. Dinkla's June 3, 2008, treatment note does, in fact, support such a finding.

[10] In light of this conclusion, the Court does not address Claimant's other arguments.

**V. CONCLUSION**

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment for Claimant and close the case.

**DONE and ORDERED** in Orlando, Florida on March 21, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Barbara Arlene Fink
1167 Buena Vista Dr.
Daytona Beach, FL 32117

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Jerome M. Albanese, Branch Chief
Diane C. Schulman, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Aaron M. Morgan
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224